**Matthew S. Parmet** (CSB # 296742)
matt@parmet.law
**PARMET PC**
440 N. Barranca Ave., #1228
Covina, CA 91723
phone 310 928 1277

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| TABATHA SOUZA, individually and on behalf of all others similarly situated, | Case No. 5:23-cv-02192 |
| Plaintiff, | **Plaintiff's Original Collective and Class Action Complaint for Damages** |
| vs. | 1. Failure to pay wages (Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* |
| SIGNATURE HEALTHCARE SERVICES, LLC; AURORA CHARTER OAK - LOS ANGELES, LLC; and DOES #1 through #50, inclusive, | 2. Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders) |
| Defendants. | 3. Violations of record keeping requirements (CAL. LAB. CODE § 226) |
| | 4. Waiting time penalties (CAL. LAB. CODE § 203) |
| | 5. Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200 *et seq.*) |

### SUMMARY

1.     Like many other companies across the United States, Defendants' Kronos-based timekeeping and payroll systems were affected by a service outage in beginning in December 2021.

2.     That outage led to problems in timekeeping and payroll throughout Defendants' organization.

3.      As a result, Defendants' workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked during and after the onset of the Kronos outage.

4.      Tabatha Souza is one such worker for Defendants.

5.      Defendants' failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

6.      Souza worked for Defendants during the Kronos outage and was affected by these pay practices—just like Defendants' other non-exempt workers.

7.      This action seeks to recover the unpaid wages and other damages Defendants owe Souza and these all these workers under the law, including unpaid wages, liquidated damages, penalties, interest, and other remedies provided by federal law.

## JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants Signature Healthcare Services, LLC and Aurora Charter Oak - Los Angeles, LLC are each headquartered in this District.

## PARTIES

10.     **Plaintiff Tabatha Souza** is a natural person.

11.     Souza was, at all relevant times, an employee of Defendants.

12.     Souza worked for Defendants during the Kronos outage.

13.     During Defendants' Kronos outage, Souza worked for Defendants in California.

14.     Souza represents at least two groups of similarly situated workers.

15.     Souza represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

**All current or former non-exempt employees working for Defendants (including all subsidiaries and alter egos) in the United States during any pay period affected by Kronos Private Cloud outage, beginning on or about December 11, 2021, until the time that Defendants regained full access to all Kronos products and services, and resumed normal employee timekeeping and payment operations.**

16. Souza represents a class of similarly situated workers under California law pursuant to Federal Rule of Civil Procedure 23. This "California Class" is defined as:

**All current or former non-exempt employees working for Defendants (including all subsidiaries and alter egos) in California during any pay period affected by Kronos Private Cloud outage, beginning on or about December 11, 2021, until the time that Defendants regained full access to all Kronos products and services, and resumed normal employee timekeeping and payment operations.**

17. Throughout this Complaint, the FLSA Collective and California Class members are also referred to jointly as the "Similarly Situated Workers."

18. **Defendant Signature Healthcare Services, LLC** is a foreign limited liability company.

19. Signature Healthcare Services, LLC maintains its headquarters and principal place of business in this District.

20. Signature Healthcare Services, LLC may be served by service upon its registered agent, **Northwest Registered Agent, Inc., 2108 N. Street, Ste. N, Sacramento, CA 95816-5712**, or by any other method allowed by law.

21. **Defendant Aurora Charter Oak - Los Angeles, LLC** is a California limited liability company.

22. Aurora Charter Oak - Los Angeles, LLC maintains its headquarters and principal place of business in this District.

23. Aurora Charter Oak - Los Angeles, LLC may be served by service upon its registered agent, **Northwest Registered Agent, Inc., 2108 N. Street, Ste. N, Sacramento, CA 95816-5712**, or by any other method allowed by law.

24. Signature Healthcare Services, LLC owns and operates approximately 20 interrelated healthcare facilities.

25.    The facilities owned and operated by Signature Healthcare Services, LLC include, but are not limited to:[1]

- Aliso Ridge Behavioral Health (Aliso Viejo, CA)
- Anaheim Community Hospital (Anaheim, CA)
- Aurora Behavioral Health Care (San Diego, CA)
- Aurora Behavioral Health System (Glendale, AZ)
- Aurora Behavioral Health System (Tempe, AZ)
- Aurora Charter Oak Hospital (Covina, CA)
- Bakersfield Behavioral Healthcare Hospital (Bakersfield, CA)
- Dallas Behavioral Healthcare Hospital (DeSoto, TX)
- Desert Parkway Behavioral Healthcare Hospital (Las Vegas, NV)
- Georgetown Behavioral Health Institute (Georgetown, TX)
- Houston Behavioral Healthcare Hospital (Houston, TX)
- Las Encinas Hospital (Pasadena, CA)
- Plum Creek Recovery Ranch (Lockhart, TX)
- Reno Behavioral Healthcare Hospital (Reno, NV)
- Sacramento Behavioral Healthcare Hospital (Sacramento, CA)
- San Antonio Behavioral Healthcare Hospital (San Antonio, TX)
- Santa Rosa Hospital (Santa Rosa, CA)
- Vista del Mar Hospital (Ventura, CA)
- Westborough Behavioral Healthcare Hospital (Westborough, MA)

26.    Signature Healthcare Services, LLC's subsidiaries and alter egos include, but are not limited to, the following:

- Aliso Ridge Behavioral Health, LLC
- Anaheim Community Hospital, LLC
- Aurora Behavioral Healthcare-Santa Rosa, LLC

---

[1] Signature Healthcare, Healthcare Facilities, https://www.signaturehc.com/healthcare-facilities (last visited Oct. 24, 2023).

PARMET PC

- Aurora Charter Oak – Los Angeles, LLC
- Aurora San Diego, LLC
- Dallas Behavioral Healthcare Hospital, LLC
- Georgetown Behavioral Health Institute, LLC
- Houston Behavioral Healthcare Hospital, LLC
- Las Encinas Hospital
- Pasadena Oaks, LLC
- Plum Creek Recovery Ranch, LLC
- Sacramento Behavioral Healthcare Hospital, LLC
- San Antonio Behavioral Healthcare Hospital, LLC

27.    These are some, but not all, of the interrelated companies within Signature Healthcare Services, LLC's integrated enterprise.

28.    Signature Healthcare Services, LLC operates these entities as a single integrated employer under the FLSA.

29.    At all relevant times, the operation of all of Signature Healthcare Services, LLC's above-referenced entities was and is interrelated.

30.    At all relevant times, Signature Healthcare Services, LLC and all of the above-referenced entities operated for a common business purpose, to provide medical and psychiatric care services to its patients-customers.

31.    At all relevant times, Signature Healthcare Services, LLC had centralized/shared back-office operations, including but not limited to human resources, accounting, marketing, risk management, financial operations, and legal compliance.

32.    At all relevant times, Signature Healthcare Services, LLC exerted operational control over its subsidiaries and alter egos.

33.    At all relevant times, Signature Healthcare Services, LLC substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

PARMET PC

34.    At all relevant times, Signature Healthcare Services, LLC had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

35.    Signature Healthcare Services, LLC employed and/or jointly employed, with its subsidiaries and alter egos, Souza and the Similarly Situated Workers.

36.    Signature Healthcare Services, LLC and its respective subsidiaries and alter egos are joint employers for purposes of the FLSA.

37.    Souza is informed and believes and on that basis allege, that at all relevant times Signature Healthcare Services, LLC, Aurora Charter Oak - Los Angeles, LLC, and Defendants Does #1 through #50 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of one or more of Defendants.

38.    Signature Healthcare Services, LLC, Aurora Charter Oak - Los Angeles, LLC, and Defendants Does #1 through #50 employed and/or jointly employed Souza and the Similarly Situated Workers.

39.    Signature Healthcare Services, LLC, Aurora Charter Oak - Los Angeles, LLC, and Defendants Does #1 through #50 are joint employers for purposes of California law.

40.    Souza is unaware of the true names of Defendants Does #1 through #50, and so Souza sues those Defendants under said fictitious names pursuant to California Code of Civil Procedure section 474. *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986).

41.    Souza will amend this Complaint to show the true names and capacities of such fictitiously named Defendants after the same has been ascertained.

42.    Because the true names of Defendants Does #1 through #50 are currently unknown, Souza refers to such Defendants in this lawsuit collectively with their non-fictitiously named joint and integrated employers as "Signature Healthcare" or "Defendants" throughout this Complaint.

**FLSA COVERAGE**

43.    At all relevant times, Signature Healthcare Services, LLC was an employer of Souza within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

44.    At all relevant times, Aurora Charter Oak - Los Angeles, LLC was an employer of Souza within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

45.    At all relevant times, Signature Healthcare Services, LLC was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

46.    At all relevant times, Aurora Charter Oak - Los Angeles, LLC was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

47.    At all relevant times, Signature Healthcare Services, LLC, operated hospitals, skilled nursing homes, intermediate care facilities, and nursing and/or personal care facilities, and was therefore an FLSA-covered employer.

48.    At all relevant times, Aurora Charter Oak - Los Angeles, LLC, operated hospitals, skilled nursing homes, intermediate care facilities, and nursing and/or personal care, facilities and was therefore an FLSA-covered employer.

49.    At all relevant times, Signature Healthcare Services, LLC was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

50.    At all relevant times, Aurora Charter Oak - Los Angeles, LLC was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

51.    During at least the last three years, Signature Healthcare Services, LLC has had gross annual sales in excess of $500,000.

52.    During at least the last three years, Aurora Charter Oak - Los Angeles, LLC has had gross annual sales in excess of $500,000.

53.    Signature Healthcare Services, LLC was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

PARMET PC

54. Aurora Charter Oak - Los Angeles, LLC was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

55. At all relevant times, Signature Healthcare Services, LLC simultaneously operated in two or more states.

56. Signature Healthcare Services, LLC employs many workers, including Souza, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

57. The goods and materials handled, sold, or otherwise worked on by Souza and other Signature Healthcare Services, LLC employees and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies, and telephones, computers, and office supplies and equipment.

58. Aurora Charter Oak - Los Angeles, LLC employs many workers, including Souza, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

59. The goods and materials handled, sold, or otherwise worked on by Souza and other Aurora Charter Oak - Los Angeles, LLC employees and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies, and telephones, computers, and office supplies and equipment.

### FACTS

60. Signature Healthcare owns and operates approximately 20 interrelated healthcare facilities. Signature Healthcare, Healthcare Facilities, https://www.signaturehc.com/healthcare-facilities (last visited Oct. 24, 2023).

61. Signature Healthcare operates 19 freestanding behavioral health hospitals and related outpatient services across several states. Signature Healthcare, Healthcare Facilities, https://www.signaturehc.com/healthcare-facilities (last visited Oct. 24, 2023).

PARMET PC

62.     Signature Healthcare owns and operates 19 freestanding acute psychiatric hospitals throughout the United States, with hospitals located in Arizona, California, Massachusetts, Nevada, and Texas. Signature Healthcare, Company History, https://www.signaturehc.com/about#company-history (last visited Oct. 24, 2023).

63.     Signature Healthcare also manages and operates a senior independent living facility located in Pasadena, California. Signature Healthcare, Company History, https://www.signaturehc.com/about#company-history (last visited Oct. 24, 2023).

64.     Signature Healthcare provides operational and financial support for healthcare organizations with its deep history and expertise in the behavioral field. Signature Healthcare, Operational Services, https://www.signaturehc.com/operational-services (last visited Oct. 24, 2023).

65.     Signature Healthcare's core competencies cover the full spectrum of development, marketing, and both clinical and financial operations. Signature Healthcare, Operational Services, https://www.signaturehc.com/operational-services (last visited Oct. 24, 2023).

66.     Signature Healthcare's operational and financial support services for healthcare organizations include recruitment of employees. Signature Healthcare, Operational Services, https://www.signaturehc.com/operational-services (last visited Oct. 24, 2023).

67.     Signature Healthcare's implements a Corporate Compliance Program and associated Code of Conduct that applies to all employees. Signature Healthcare, Operational Services, https://www.signaturehc.com/operational-services (last visited Oct. 24, 2023).

68.     Many of Signature Healthcare's employees are non-exempt hourly and salaried workers.

69.     Since at least November 2021, Signature Healthcare has used Kronos timekeeping software.

70.     On or about December 11, 2021, the Kronos system suffered a disruption in service due to a ransomware attack.

71.    The Kronos outage interfered with the ability of Kronos users, including Signature Healthcare, to use Kronos to track hours and pay employees.

72.    For at least a portion of time following the Kronos hack, Signature Healthcare failed to accurately track the hours that Souza and Similarly Situated Workers worked.

73.    For at least a portion of time following the Kronos outage, Signature Healthcare failed to correctly pay Souza and Similarly Situated Workers for the hours that it did track, or for hours that were not tracked.

74.    Instead, Signature Healthcare used various methods to estimate the number of hours Souza and Similarly Situated Workers have worked in each pay period.

75.    As a result of Signature Healthcare's failure to accurately track the actual hours worked each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

76.    As a result of Signature Healthcare's failure to accurately pay non-exempt employees the hours that they reported each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

77.    Many employees were not paid for all their non-overtime wages for hours worked in certain workweeks.

78.    Souza is one of the many Signature Healthcare employees affected by these pay and timekeeping practices.

79.    Souza regularly worked over 40 hours per week for Signature Healthcare.

80.    Souza worked for Signature Healthcare for more than 40 hours during one or more workweeks during the Kronos outage.

81.    Souza worked for Signature Healthcare for more than 8 hours during one or more days during the Kronos outage.

82.    But Souza was not paid the proper overtime premium for all hours worked on time, if at all, for each of those weeks after the onset of the Kronos service disruption, on or about December 11, 2021.

PARMET PC

83.     In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

84.     Signature Healthcare knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

85.     Signature Healthcare knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

86.     Signature Healthcare could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

87.     But Signature Healthcare did not accurately track time and fully and timely pay employees for the time they worked, including overtime hours, and at the regular rates at which they were supposed to be paid.

88.     It was feasible for Signature Healthcare to put in timekeeping and pay systems during the Kronos outage so that employees could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

89.     But Signature Healthcare failed to put a competent system in place to ensure that happened.

90.     In other words, Signature Healthcare pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than taking steps to make sure its employees were paid on time and in full for the work they did.

91.     An employer cannot set up inefficient timekeeping and payroll systems and then claim it is not responsible for the timely payment of wages. *Cahill v. City of New Brunswick*, 99 F.Supp.2d 464, 475 (D.N.J. 2000).

92.     Yet, in the wake of the Kronos outage, that is exactly what Signature Healthcare did.

93.    Souza is just one of the many front-line employees who had to shoulder the burden of this decision by Signature Healthcare.

94.    Souza is just one of the many Signature Healthcare employees who had to shoulder the burden of Signature Healthcare's timekeeping and payroll policies and practices.

95.    Souza was a non-exempt hourly employee of Signature Healthcare.

96.    Souza regularly worked over 40 hours per week for Signature Healthcare.

97.    Souza regularly worked over 8 hours per day for Signature Healthcare.

98.    Souza's normal, pre-Kronos outage hours are reflected in Signature Healthcare's records.

99.    Souza regularly worked over 40 hours per week for Signature Healthcare on one or more workweeks during payroll cycles affected by the Kronos outage.

100.    In payroll cycles affected by the Kronos outage, Signature Healthcare did not timely pay Souza and Similarly Situated Workers for their actual hours worked each week.

101.    In payroll cycles affected by the Kronos outage, Signature Healthcare did not accurately record the hours worked by Souza and Similarly Situated Workers, in multiple workweeks.

102.    Signature Healthcare was aware of the overtime requirements of the FLSA.

103.    Signature Healthcare nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Souza.

104.    Signature Healthcare nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Souza.

105.    Signature Healthcare's failure to pay overtime to these non-exempt workers constitutes a willful violation of the FLSA.

106.    The full overtime wages owed to Souza and the Similarly Situated Workers became "unpaid" when the work for Signature Healthcare was done—that is, on Souza and the Similarly Situated Workers' regular paydays. *See, e.g., Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th

PARMET PC

Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

107.   At the time Signature Healthcare failed to pay Souza and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Signature Healthcare became liable for all liquidated damages and any other damages owed under federal law.

108.   In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993).

109.   Any payment made by Signature Healthcare to Souza or the Similarly Situated Workers that Signature Healthcare may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

110.   The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g., Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

111.   Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Signature Healthcare's acts and omissions resulting in the unpaid wages in the first place.

112.   Souza and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Signature Healthcare under federal and California law.

### COLLECTIVE ACTION ALLEGATIONS

113.   Numerous individuals were victimized by Signature Healthcare's patterns, practices, and policies, which are in willful violation of the FLSA.

114.   Based on his experience and tenure with Signature Healthcare, Souza is aware that Signature Healthcare's illegal practices were imposed on the FLSA Collective.

115.   The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

116.   These employees are victims of Signature Healthcare's respective unlawful compensation practices and are similarly situated to Souza in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

PARMET PC

117. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

118. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

119. Signature Healthcare's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

120. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

**CLASS ACTION ALLEGATIONS**

121. The illegal practices Signature Healthcare imposed on Souza were likewise imposed on the California Class members.

122. Souza and the California Class are all workers engaged in foreign commerce.

123. Souza and the California Class are all workers engaged in interstate commerce.

124. The illegal practices Signature Healthcare imposed on Souza were likewise imposed on the California Class Members.

125. Numerous other individuals who worked for Signature Healthcare were not properly compensated for all hours worked, as required by California law.

126. The California Class is so numerous that joinder of all members of the class is impracticable.

127. Signature Healthcare imposed uniform practices and policies on Souza and the California Class members regardless of any individualized factors.

128. Based on her experience and tenure with Signature Healthcare, as well as coverage of the Kronos hack, Souza is aware that Signature Healthcare's illegal practices were imposed on the California Class members.

129. California Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

PARMET PC

130.    Signature Healthcare's failure to pay wages and overtime compensation in accordance with California law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the California Class Members.

131.    Souza's experiences are therefore typical of the experiences of the California Class members.

132.    Souza does not have any interest contrary to, or in conflict with, the members of the California Class. Like each member of the proposed class, Souza has an interest in obtaining the unpaid overtime wages and other damages owed under the law.

133.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

134.    Absent this action, many California Class members likely will not obtain redress of their injuries, and Signature Healthcare will reap the unjust benefits of violating California law.

135.    Furthermore, even if some of the California Class members could afford individual litigation against Signature Healthcare, it would be unduly burdensome to the judicial system.

136.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

137.    The questions of law and fact common to each of the California Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a.    Whether Souza and the California Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek or 8 in a single day;

      b.    Whether Souza and the California Class members were paid overtime at 2 times their regular rate of pay for hours worked in excess of 12 in a single day or the seventh day in a workweek;

PARMET PC

c.    Whether Signature Healthcare's failure to pay Souza and the California Class members their proper overtime rates violated California law; and

d.    Whether Signature Healthcare paid Souza and the California Class members all wages due within the period of time allowed by California law.

138.    Souza's claims are typical of the California Class members. Souza and the California Class members have all sustained damages arising out of Signature Healthcare's illegal and uniform employment policies.

139.    Souza does not know of any difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

140.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

**FIRST CAUSE OF ACTION**
**OVERTIME VIOLATIONS OF THE FLSA**
**AS TO SOUZA AND THE FLSA COLLECTIVE**

141.    Souza incorporates each allegation set forth in paragraphs 1 to 140

142.    By failing to pay Souza and the FLSA Collective members overtime at 1.5x their regular rates, on time and in full, Signature Healthcare violated the FLSA. 29 U.S.C. § 207(a).

143.    Signature Healthcare owes Souza and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

144.    Signature Healthcare owes Souza and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

145.    Likewise, Signature Healthcare owes Souza and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 778.315.

PARMET PC

146.    Signature Healthcare knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Souza and the Collective members the compensation owed to them under the FLSA.

147.    Because Signature Healthcare knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Signature Healthcare owes these wages for at least the past three years.

148.    Signature Healthcare's failure to pay compensation owed under the FLSA to Souza and the Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

149.    Because Signature Healthcare's decision not to pay overtime was not made in good faith, Signature Healthcare also owes Souza and the Collective members an amount equal to the unpaid wages as liquidated damages.

150.    Accordingly, Souza and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY WAGES UNDER CALIFORNIA LAW**
**AS TO SOUZA AND THE CALIFORNIA CLASS**

151.    Souza incorporates each allegation set forth in paragraphs 1 to 140

152.    The California Labor Code requires that all employees, including Souza and the California Class, receive 1.5x their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

153.    Despite working over 8 hours a day as part of their normal and regular shift, Souza and the California Class did not receive proper overtime compensation for all hours worked over 8 in one day.

154.    The California Labor Code also requires that all employees, including Souza and the California Class, receive 2x times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

155.    Although Souza and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

156.    The California Labor Code requires that all employees, including Souza and the California Class, receive 2x the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders #1-2001 through #17-2001.

157.    Although Souza and the California Class regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

158.    This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Souza and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF RECORD KEEPING REQUIREMENTS UNDER CALIFORNIA LAW AS TO SOUZA AND THE CALIFORNIA CLASS

159.    Souza incorporates each allegation set forth in paragraphs 1 to 140.

160.    California Labor Code section 226 requires Signature Healthcare to keep accurate records regarding the rates of pay for its California employees and provide that information to Souza and the California Class with their wage payment.

161.    Because Signature Healthcare failed to pay Souza and the California Class lawful wages, it did not maintain accurate records of Souza and the California Class's daily

hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Souza and the California Class with their wages.

162.    This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Souza and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

**FOURTH CAUSE OF ACTION**
**WAITING TIME PENALTIES UNDER CALIFORNIA LAW**
**AS TO SOUZA AND THE CALIFORNIA CLASS**

163.    Souza incorporates each allegation set forth in paragraphs 1 to 140.

164.    At all relevant times, Signature Healthcare was required to pay Souza and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

165.    As a result of Signature Healthcare's alleged California Labor Code violations, Signature Healthcare regularly failed to pay Souza and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Signature Healthcare owes waiting time penalties pursuant to California Labor Code section 203.

166.    The conduct of Signature Healthcare, in violation of Souza and the California Class members' rights, was willful and was undertaken by the agents, employees, and managers of Signature Healthcare.

167.    Signature Healthcare's willful failure to provide Souza and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

168.    Therefore, Souza and the California Class members who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF UNFAIR COMPETITION LAW**
**AS TO SOUZA AND THE CALIFORNIA CLASS**

169.    Souza incorporates each allegation set forth in paragraphs 1 to 140.

170. Signature Healthcare has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) accurate wage statements; and (4) waiting time penalties.

171. As a result of Signature Healthcare's failure to comply with federal and state law, Rockport and Vernon have also violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et. seq., which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

172. The relevant acts by Signature Healthcare occurred within the four years preceding the filing of this action.

173. On information and belief, Signature Healthcare has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, et seq., including those set forth above, depriving Souza and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

174. Souza and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

175. Souza and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting Signature Healthcare from engaging in the violations and other misconduct referred to above.

176. Signature Healthcare is also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

### RELIEF SOUGHT

177. Souza prays for judgment against Signature Healthcare as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the California law claims;

PARMET PC

c.    For an order finding Signature Healthcare liable for violations of federal wage laws with respect to Souza and the FLSA Collective members;

d.    For an order finding Signature Healthcare liable for violations of California law with respect to Souza and the California Class members;

e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal law to Souza and the FLSA Collective members;

f.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under California law to Souza and the California Class members;

g.    For an equitable accounting and restitution of wages due to Souza and the FLSA Collective and California Class members;

h.    For a judgment awarding costs of this action to Souza and the FLSA Collective and California Class members;

i.    For a judgment awarding attorneys' fees to Souza and the FLSA Collective and California Class members;

j.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Souza and the FLSA Collective and California Class members; and

k.    For all such other and further relief as may be necessary and appropriate.

Dated: <u>Oct. 24, 2022</u>

Respectfully submitted,

**PARMET PC**

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**

**Attorneys for Plaintiff**

### JURY DEMAND

Plaintiff demands a trial by jury on all issues.

*/s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**